UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

                                                                                         Case No. 07-50210

-vs-                                                                             Judge Avern Cohn

ALETHEA EVANS,

    Defendant-Appellant.

                                                       /

## **MEMORANDUM AND ORDER AFFIRMING DEFENDANT'S CONVICTION**

## **I. INTRODUCTION**

This is an appeal in a criminal case. After a bench trial before a magistrate judge, Defendant-Appellant Alethea Evans ("Evans") was convicted of threatening a Federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and sentenced to one year of probation. Evans was acquitted of a separate charge of failing to comply with the directions of a police officer. She now appeals her conviction, arguing that Federal Protective Services ("FPS") officers exceeded their statutory authority when they conducted an investigative stop of her car. For the reasons that follow, Evans' conviction is AFFIRMED.

## **II. Background**

The evidence adduced at the trial before the magistrate judge was as follows.

On February 13, 2006, Veronica Cartwright "(Cartwright") and Qualette Pasha ("Pasha") went to the Social Security Administration ("SSA") office at 18921 Wyoming Street in Detroit, Michigan. Seeing Pasha using her cell phone inside the office, a security guard, Dennis Cleveland ("Cleveland"), approached her and told her to conduct her conversation in the building's breezeway or outside. Use of cell phones inside SSA offices is prohibited by federal regulation. After Pasha refused to comply, Cleveland contacted FPS. FPS Officer Kerwin Smith ("Smith") and his partner, Officer Warren King ("King"), received a dispatch to respond to a "disturbance" at the SSA office.

By the time Smith and King arrived at the scene, Pasha had concluded her cell phone call. Cleveland pointed Pasha and Cartwright out to Smith. Smith then escorted the two women out of the building, telling them that because of the disturbance they had caused, they would have to leave and come back another day. Pasha then began playing music with her phone and dancing in front of Smith, taunting him. Smith opted not to take any further action, since it was clear to him that Pasha and Cartwright were waiting for someone to pick them up.

A short time later, Evans pulled her car up to the curb outside the SSA office. Smith says that Evans nearly caused an accident while pulling up to the office, then made a U-turn and parked in such a manner that her vehicle was blocking the SSA office driveway. Pasha and Cartwright got into the car while Evans went inside the SSA office. According to Smith, Evans was acting "belligerent" and making hostile comments about the persons who had told Pasha not to use her cell phone; however, Evans never spoke directly to Smith or King. After seeing that there was a line inside

2

the building, Evans immediately left the SSA office, got back into her car, and drove away.

While Evans' car was parked outside the office, Smith and King ran a check on her license plate number, which came back clean. In his report, Smith stated that after Evans drove away, he "began to patrol around the area of the SSA, in case the suspect's [sic] returned." At her trial, Smith testified that he followed Evans' vehicle at a distance rather than conducting a more open-ended "patrol." Approximately four to five blocks from the SSA office, Evans pulled her vehicle behind Smith and King and began to "tailgate" their marked police car. The women also appeared to reach underneath their seats and then made hand gestures toward the police car, their thumbs raised and index fingers pointed "as if they were pointing a gun." Smith then maneuvered his patrol car behind Evans' vehicle and activated his lights. Evans pulled her vehicle to the side of the road.

When Smith approached her vehicle, Evans made various obscene remarks and refused to lower the window or produce her license or registration. Smith and King radioed the Detroit Police Department for assistance. Detroit officers soon arrived and instructed Evans that Smith and King were Federal law enforcement officers. Evans then handed over her license and registration. The officers ran a license check and discovered that there was an outstanding state warrant for Evans. The officers then took Evans into custody and transported her to the McNamara Federal Building at 477 Michigan Avenue in Detroit for processing. While she was in custody, Evans continued to direct profane remarks and threats of physical violence at the officers.

After a bench trial, the magistrate judge denied Evans' motions to dismiss the violation notices against her and to suppress evidence seized during and after the FPS officers initiated the investigative stop of her vehicle. The magistrate judge found Evans guilty of threatening a Federal law enforcement officer under 18 U.S.C. § 115(a)(1)(B). The magistrate judge found Evans not guilty of failing to comply with the directions of a Federal law enforcement officer under 41 C.F.R. § 102-74.390 after expressing concerns about the jurisdictional basis for the charge.

### III.  Standard of Review

The magistrate judge's denials of Evans' motion to dismiss the violation notices and to suppress evidence seized during the investigative stop and subsequent arrest will be reviewed *de novo*.  28 U.S.C. § 636(b)(1)(B); U.S. v. Philp, 460 F.3d 729, 731 (6th Cir. 2006); U.S. v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001).  However, the district court need not conduct a new trial or hearing and may rely on the evidentiary record developed before the magistrate judge.  U.S. v. Raddatz, 447 U.S. 667, 673-76 (1980).

### IV.  Analysis

On appeal, Evans does not dispute that she threatened a Federal law enforcement officer. However, she says that the FPS officers exceeded the statutory authority conferred on them by 40 U.S.C. § 1315(b) when they conducted an investigative stop of her vehicle and arrested her on an outstanding state court warrant. Evans goes on to argue that, as a consequence, the officers were not engaged in

"official duties" under 18 U.S.C. § 115(a)(1) and that the indictment against her for violation of § 115(a)(1) should be dismissed.[1]

40 U.S.C. § 1315(b)(1) charges FPS officers with "protection of property owned or occupied by the Federal Government and persons on the property, including duty in areas outside the property to the extent necessary to protect the property and persons on the property." Subsection 1315(b)(2) provides that

> [w]hile engaged in the performance of official duties, an officer or agent designated under this subsection may...enforce Federal laws and regulations for the protection of persons and property...make arrests without a warrant for any offense against the United States committed in the presence of the officer or agent...[and] conduct investigations, on and off the property in question, of offenses that may have been committed against property owned or occupied by the Federal Government or persons on the property.

The statute thus expressly empowers FPS officers to conduct investigations and make arrests outside of federal property when "necessary to protect the property and persons on the property."

Here, the record indicates Smith observed the initial disturbance at the SSA office and Evans' hostile comments when she arrived on the scene. He interpreted Evans' conduct "as somewhat of a – a threat on the person or the security guard who

---

[1] Section 115(a)(1) provides in relevant part: "Whoever...threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided."

was sitting inside the – the office, that maybe at a later date, that this person may come back to – to cause some kind of harm or disturbance." Smith therefore determined to monitor Evans, Cartwright, and Pasha in an effort to avoid any further disruption at the SSA office. In short order, Evans purposefully began to harass the officers by "tailgating" their patrol car, making threatening gestures, and refusing to cooperate after the officers initiated an investigative stop.

In monitoring what they reasonably believed to be an ongoing threat to the orderly functioning of the SSA office, the FPS officers were operating within the protective and investigative roles prescribed by the statute. This case should therefore be distinguished from a situation in which a law enforcement officer takes action based on his observations of conduct wholly outside of and unconnected with his jurisdiction. See, e.g., U.S. v. Foster, 566 F. Supp. 1403, 1411-12 (D.C.D.C. 1983) (evidence suppressed where transit authority police officer did not have authority to make traffic stop on city street based on offense that had no connection to transit authority facilities). Rather, the record here indicates that the officers had a reasonable, good faith belief that Evans and her companions posed a threat to federal property and sought to monitor them in order to avoid any further disruption on the property. See U.S. v. Jones, 47 F.3d 1166 (table), 1995 WL 81849 (4th Cir. 1995) (conviction affirmed where federal law enforcement officer ticketed suspect although traffic violation was not completed on federal property, where officer relied in good faith on federal regulation requiring compliance with certain posted signs). The indictment should therefore not be dismissed, nor the evidence suppressed.

In addition, Evans argues that FPS officers failed to Mirandize her after her arrest on the state warrant and that statements she made after being taken into custody should therefore be suppressed. Even assuming *arguendo* that her argument on this point is correct, the record reveals that Evans' conduct prior to her arrest, specifically "tailgating" the police car and making hand gestures that suggested pointing a gun at the officers, is sufficient to sustain her conviction under § 115(a)(1)(B). Moreover, the verbal threats that Evans directed at the officers were made voluntarily and spontaneously. Although the officers apparently posed some questions to Evans without giving her a Miranda warning, the threats that Evans made were in no way responsive to the questions posed. See Stanley v. Wainwright, 604 F.2d 379, 381 (5th Cir. 1979) ("Miranda was designed to curb unfair methods of custodial interrogation; it does not protect spontaneous utterances made by detainees mistakenly believing that they will not be overheard nor forbid police, under fifth amendment sanction, from setting snares.") There is nothing in the record to indicate that Smith and King were trying to elicit threats from Evans. Because the threats were not the product of interrogation by the officers, Miranda does not afford Evans any relief.

## V. Conclusion

Evans' claims of error are denied and her conviction is AFFIRMED.

SO ORDERED.

Dated: December 14, 2007        s/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 14, 2007, by electronic and/or ordinary mail.

                                s/Julie Owens
                                Case Manager, (313) 234-5160

7